IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT M . PAVUK                              Case No.: 2:09-CV-00514

       Plaintiff,                          Judge Graham

   v.                                      Magistrate Judge Abel

U.S. BANK NATIONAL ASSOCIATION
ND, et al.,

       Defendants.

## OPINION AND ORDER

This matter is before the Court on the motion to dismiss pursuant to Fed. R. 12(b)(6) filed by defendant U.S. Bank National Association, ND (U.S. Bank) (doc. 33).

I.     FACTS

On September 30, 2005, Plaintiff signed an Adjustable Rate Note and Mortgage in the amount of $232,200.00 with U.S. Bank in order to refinance real property in Westerville, Ohio (hereinafter referred to as "first mortgage").  The first mortgage was duly recorded in the Franklin County Recorder's office on October 6, 2005.  The first mortgage's initial interest rate was 5.9% with an adjustable rate beginning in November of 2010.  The adjusted interest rate would not increase beyond 11.9% nor decrease below 5.9%.   Plaintiff also entered into a second mortgage with U.S. Bank on September 30, 2005 in the amount of $25,800.00 with a 30 year fixed interest rate of 8.25% (hereinafter referred to as "second mortgage").  The second mortgage was duly recorded with the Franklin County Recorder's office on October 6, 2005.

1

Plaintiff was able to make payments on the first and second mortgage for four years.  He alleges that in 2009, however, he encountered economic difficulties with his small business and was no longer able to maintain an income necessary to meet the monthly payments.   On June 19, 2009 plaintiff filed a complaint against U.S. Bank and the Franklin County Treasurer.  An amended complaint was filed on July 9, 2009.   In his amended complaint, the plaintiff alleges that defendant U.S. Bank engaged in predatory lending and violated  15 U.S.C. §1639(h) (the Home Ownership and Equity Protection Act, "HOEPA")[1] and the Federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, __ U.S. __,  129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  Iqbal, 129 S.Ct. at 1949-50; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the

---

[1]        Plaintiff refers to 15 U.S.C.  §1639(h) as the Federal Consumer Credit Protection Act.

elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S.Ct. at 1949; <u>see</u> <u>also</u> <u>Twombly</u>, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." <u>Twombly</u>, 550 U.S. at 555 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 129 S.Ct. at 1950.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 129 S.Ct. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Though "[s]pecific facts are not necessary," <u>Erickson</u>, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," <u>Twombly</u>, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. <u>Iqbal</u>, 129 S.Ct. at 1949; <u>Twombly</u>, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

3

'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

III.    **LEGAL ANALYSIS**

    A.    **15 U.S.C. §1639(h) – Home Ownership and Equity Protection Act (HOEPA)**

Pavuk alleges that defendant violated 15 U.S.C. § 1639(h) by extending credit to him without considering his ability to repay the debt. 15 U.S.C. § 1639(h) provides:

> A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment.

15 U.S.C. § 1602(aa)(1) provides: "A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction."   HOEPA does not apply to residential mortgage transactions, which are defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. §1602(w);   Booker v. Wells Fargo Home Mortg., Inc., 138 Fed. Appx. 728, 730 (6th Cir 2005)(HOEPA does not apply to residential mortgage transactions); see also, Sparks v. Homecomings Fin., LLC, No. 09-12092, 2009 U.S. Dist. LEXIS 99709 (E.D. Mich. October 27, 2009)(claim brought under § 1639(h) is not plausible because the mortgage on a principal residence qualifies as a residential mortgage transaction).

As an initial matter, it appears that plaintiff's loan was used to refinance a real property

4

mortgage used to acquire his primary residence[2].  As such, it would not qualify as a HOEPA loan. However,  even if it did qualify as HOEPA loan, the Act requires that the loan have an annual percentage rate of at least 10% or higher, "at the consummation of the transaction."  15 U.S.C. §1602(aa)(1).  According to the plaintiff, the initial interest rate on the adjustable rate note was 5.9%.  Although it could, under the terms of the note, rise to as high as 11.9%, this was not the rate at the consummation of the transaction.  The open ended mortgage had an interest rate of 8.25% at the consummation of the transaction.  Accordingly, neither loan would qualify as a HOEPA loan.

In addition, in order to maintain a claim under HOEPA, the plaintiff must allege that the lender engages in a pattern or practice of making mortgage loans " without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment."  See 15 U.S.C. § 1639(h).  However, plaintiff admits that for four years after signing the loan documents he had sufficient income to make timely payments. (Pavuk Aff, Doc. 38 at ¶ 3).  It was only when plaintiff's small business income declined that he was unable to make his loan payments.  There is no factual allegation supporting plaintiff's conclusory assertion that defendant based his ability to repay the loan solely on the value of the residence.

For the foregoing reasons, plaintiff's claim under 15 U.S.C. § 1639(h) fails.

**B.      18 U.S.C. §1962 – Racketeering Influenced and Corrupt Organizations Act (RICO)**

---

[2]      Although plaintiff does not identify the property that is the subject of the complaint (the "Premises") as his primary residence, the address of the Premises is the same as plaintiff's address as listed on the complaint, and as listed in the mortgage documents.

Pursuant to 18 U.S.C. § 1964, a plaintiff may bring "a private right of action for treble damages against any person who 'injured his business or property by reason of a violation of 18 U.S.C. § 1962.'" Dimov v. EMC Mortg. Corp., 1:09-CV-211, 2010 U.S. Dist. LEXIS 60659 (E.D. Tenn. June 17, 2010)(citing Riverview Health Institute LLC v. Medical Mutual of Ohio, 601 F.3d 505, 513 (6th Cir. 2010)).   Although plaintiff does not specifically state which subsection of RICO governs his claim, the allegations in the complaint indicate that plaintiff brings his claim under 18 U.S.C. 1962(c).[3]  Plaintiff does not address defendant's motion to dismiss the RICO claim in his memorandum in opposition.

To establish a RICO violation under subsection (c),  a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Hager v. ABX Air, Inc., No. 2:07-cv-317, 2008 U.S. Dist. LEXIS 23486 (S.D. Ohio Mar. 25, 2008)(citing Sedima v. Imrex Co., 473 U.S. 479, 496 (1985)). The "conduct" prong has been defined to require that a defendant "participate in the operation or management of the enterprise itself." Shuttlesworth v. Housing Opportunities Made Equal, 873 F. Supp. 1069, 1074 (S.D. Ohio 1994) (citing Reves v. Ernst & Young, 113 S. Ct. 1163 (1993)).  An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or

---

[3]     18 U.S.C. 1962(a) and (b) both require that the plaintiff allege that he was injured by defendant's "alleged use or investment of racketeering proceeds; an injury caused by the alleged racketeering activities themselves is insufficient."   Dimov v. EMC Mortg. Corp., 1:09-CV-211, 2010 U.S. Dist. LEXIS 60659.  Plaintiff does not allege that he was injured as a result of the bank using or investing the property or any proceeds it might obtain through foreclosure or by the acquisition of an enterprise. Thus, even if he were attempting to bring a claim under either of these subsections, such claim would fail. Nor does plaintiff allege a conspiracy to violate any of the subsections, thereby preventing him from making a claim under 18 U.S.C. §1962(d) (" It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.").

6

group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). The

person engaged in illegal conduct and the "enterprise" must be separate entities. Dimov v. EMC

Mortg. Corp., 1:09-CV-211, 2010 U.S. Dist. LEXIS 60659 (E.D. Tenn. June 17, 2010) (citing

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001)); Abrams v. First Tenn.

Bank Nat'l Ass'n, No. 3:03-CV-428, 2007 U.S. Dist. LEXIS 15524 (E.D. Tenn. Mar. 5,

2007)(citing Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1489 (6th Cir. 1989))(the "entity

constituting the enterprise must be a separate entity from the 'person' committing harm under

RICO."). As used in the statute, a "pattern" requires "at least two qualifying acts occurring

within 10 years of one another." Shuttlesoworth, 873 F. Supp at 1074 (citing 18 U.S.C. §

1961(5)). Finally, "racketeering activity" is defined to "include a host of so-called predicate acts,

including 'any act which is indictable under . . . section 1341 (relating to mail fraud).'" Bridge v.

Phoenix Bond & Indem. Co., 553 U.S. 639, 128 S. Ct. 2131, 2138 (2008).

> Plaintiff's sole allegation in the complaint pertaining to an "enterprise" is as follows:

> Defendant U.S. Bank has control of millions of dollars of mortgage loans, which can
> clearly be classified as an enterprise.

(Doc. 5, ¶23).

Plaintiff does not allege an "enterprise" as defined in the statute, but rather attempts to classify the

defendant's lending practices as the enterprise. However, U.S. Bank cannot be both the

"enterprise" and the person committing the harm under RICO. Abrams v. First Tenn. Bank Nat'l

Ass'n, No. 3:03-CV-428, 2007 U.S. Dist. LEXIS 15524 (E.D. Tenn. Mar. 5, 2007)(citing Puckett

v. Tennessee Eastman Co., 889 F.2d 1481, 1489 (6th Cir. 1989)). Accordingly, plaintiff's

complaint fails to allege the existence of an "enterprise" as required for a claim under RICO.

In addition, plaintiff's complaint fails to properly plead a "pattern" of "racketeering activity."  Under the statute, "racketeering activity" is defined to "include a host of so-called predicate acts, including 'any act which is indictable under . . . section 1341 (relating to mail fraud).'" Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 128 S. Ct. 2131, 2138 (2008). In the Sixth Circuit, "a plaintiff asserting a RICO claim based on the predicate acts of mail or wire fraud must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." Reed v. Countrywide Home Loans, Inc., No.: 08-12363, 2008 U.S. Dist. LEXIS 47346 (E.D. Mich. June 18, 2008)(citing Bender v. Southland Corp., 749 F.2d 1205, 1216 (6th Cir. 1984)).  Fed. R. Civ. P. 9(b) requires that fraud be pleaded with particularity which requires plaintiff to allege the time, place and contents of the alleged fraudulent statements.

Plaintiff alleges that the defendant's racketeering activity was mail fraud.  Thus, he had to plead his claim with particularity, and specifically the time, place and contents of the alleged fraudulent statement.  His complaint, however, states only that the defendant engaged in mail fraud by using the mail " to send copies, to Plaintiff Pavuk, of the signed application for the mortgage loans, the closing documents for the mortgage loans, letters from Defendant U.S. Bank, and the monthly statements from Defendant U.S. Bank; and by accepting payments on the predatory mortgage loans via the mail." (Doc. 5 ¶ 22).   Other than these bare assertions, plaintiff provides no specific information as to when these mailings occurred nor the content of each mailing.  See Davis v. Wilmington Fin., Inc., No. PJM 09-1505, 2010 U.S. Dist. LEXIS 29263 (D. Md. Mar. 26, 2010)(conclusory allegations that the lender used mail to receive payments on loans and to mail documents related to the loans without specifics on time and content of the mailings failed to meet requirements of Fed. R. Civ. P. 9(b)).  In addition, plaintiff completely

8

fails to allege a factual pattern of racketeering activity.  Plaintiff merely makes a conclusory statement that defendant engaged in a "pattern of racketeering activity."  The conduct complained of is limited to mailings between the defendant and plaintiff related only to plaintiff's own residential mortgage.  This does not evidence a "pattern" of racketeering activity. See Davis, 2010 U.S. Dist. LEXIS 29263 (allegations limited solely to plaintiffs and their mortgage transaction did not evidence a "pattern" of racketeering beyond plaintiff and was fatal to the RICO claim).  For the foregoing reasons, plaintiff's RICO claim must fail.

IV.    CONCLUSION

Based on the foregoing, the court GRANTS defendant U.S. Bank's motion to dismiss (doc. 33).   The only remaining defendant is the Franklin County Treasurer, against whom plaintiff makes no allegations. Accordingly, plaintiff shall SHOW CAUSE within fourteen (14) days why Franklin County Treasurer should not be dismissed.

IT IS SO ORDERED.


S/ James L. Graham
JAMES L. GRAHAM
United States District Court


Date:   August 2, 2010

9